## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI

LISA L. BROWN,                )
                              )
        Plaintiff,         )
                              )
v.                          )         No. 4:13-CV-368-DGK-SSA
                              )
CAROLYN W. COLVIN, Acting   )
Commissioner of Social Security,  )
                              )
        Defendant.       )

## ORDER AFFIRMING THE DECISION OF THE ADMINISTRATIVE LAW JUDGE

This action seeks judicial review of the Commissioner of Social Security's decision denying Plaintiff Lisa L. Brown's applications for Social Security benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–434, and Supplemental Security Income under Title XVI of the Act, 42 U.S.C. §§ 1381–1383f. The Administrative Law Judge ("ALJ") found Plaintiff had multiple severe impairments, including fibromyalgia, degenerative joint disease of the left knee, degenerative disc and joint disease of her cervical spine, migraines, restless leg syndrome, insomnia, impairment in REM sleep, major depressive disorder, and an anxiety-related disorder, but retained the residual functional capacity ("RFC") to perform work as a mail clerk, office helper, or routing clerk.

After carefully reviewing the record and the parties' arguments, the Court finds the ALJ's opinion is supported by substantial evidence on the record as a whole. The Commissioner's decision is AFFIRMED.

### Procedural and Factual Background

The complete facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary. Plaintiff filed the pending applications on March 31, 2011,

alleging a disability onset date of September 17, 2010. The Commissioner denied the applications at the initial claim level, and Plaintiff appealed the denial to an ALJ. On June 4, 2012, the ALJ held a hearing and on August 23, 2012, the ALJ issued a decision finding Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review on March 5, 2013, leaving the ALJ's decision as the Commissioner's final decision. Plaintiff has exhausted all of her administrative remedies and judicial review is now appropriate under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

## Standard of Review

The Commissioner follows a five-step sequential evaluation process[1] to determine whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A).

A federal court's review of the Commissioner of Social Security's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). The court

---

[1] "The five-step sequence involves determining whether (1) a claimant's work activity, if any, amounts to substantial gainful activity; (2) his impairments, alone or combined, are medically severe; (3) his severe impairments meet or medically equal a listed impairment; (4) his residual functional capacity precludes his past relevant work; and (5) his residual functional capacity permits an adjustment to any other work. The evaluation process ends if a determination of disabled or not disabled can be made at any step." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014); *see* 20 C.F.R. §§ 404.1520(a)–(g); 416.920(a)–(g). Through Step Four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches Step Five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009).

must "defer heavily" to the Commissioner's findings and conclusions. *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice, and a decision is not outside this zone simply because the court might have decided the case differently were it the initial finder of fact. *Buckner*, 646 F.3d at 556.

## Discussion

Plaintiff argues that the administrative law judge ("ALJ") erred by: (1) improperly weighing the medical opinions of record; (2) erroneously formulating her residual functional capacity ("RFC"); and (3) failing to carry her Step Five burden. These arguments are without merit.

### I.      The ALJ properly weighed the medical opinions.

Plaintiff first challenges how the ALJ weighed the medical opinions. Specifically, Plaintiff argues that the ALJ erred by discounting the opinions of her three treating physicians and giving controlling weight to the opinions of two non-treating physicians.

The Social Security Administration regulations generally entitle a treating physician's opinion to at least substantial weight. 20 C.F.R. §§ 404.1527(c), 416.927(c). However, such an opinion "does not automatically control or obviate the need to evaluate the record as a whole." *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004). Rather, an "ALJ may discount or disregard the opinion of a treating physician where other medical assessments are more thoroughly supported or where a treating physician renders inconsistent opinions." *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010). In determining how much weight to accord a physician's opinion, the ALJ must take into account a variety of considerations including: whether the opinion is supported with facts and evidence; whether the opinion is consistent with

other evidence and opinions, including the physician's own notes; and whether the physician's specialty gives her greater credibility. 20 C.F.R. §§ 404.1527(c), 416.927(c); *Renstrom v. Astrue*, 680 F.3d 1057, 1065 (8th Cir. 2012). For instance, one treating physician's orders to engage in regular aerobic exercise can contradict another treating physician's finding that the claimant is disabled. *Choate v. Barnhart*, 457 F.3d 865, 870 (8th Cir. 2006). Further, conclusory statements by a medical source that a claimant is "disabled" or "unable to work" impermissibly decide questions committed to the ALJ, and so cannot support a finding of disability. 20 C.F.R. § 404.1527(d)(1); SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996) ("[T]reating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance.").

The ALJ first discounted the opinion of Plaintiff's treating physician Dr. Mara C. Galvin, M.D., who opined that Plaintiff was "disabled" and "bedridden." R. at 359. The ALJ committed no error in doing so. First, as a gynecologist Dr. Galvin is not an expert in any of the impairments that she claims has rendered Plaintiff disabled and bedridden. R. at 353–54, 359. Second, Dr. Galvin's claims are conclusory. Finally, Plaintiff's admission that she regularly exercises and other physicians' instructions to Plaintiff to exercise completely contradict Dr. Galvin's opinion that Plaintiff was bedridden. *See, e.g.*, R. at 362, 364, 509. Thus, the ALJ properly disregarded Dr. Galvin's letter.[2]

---

[2] Contrary to Plaintiff's argument, the ALJ was not required to contact Dr. Galvin for further information concerning her conclusions. If an ALJ discounts a medical source's opinion and the basis for that opinion is unclear, the ALJ should "make every reasonable effort" to recontact that source for clarification. SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996). However, if the ALJ concludes "that the treating doctor's opinion is inherently contradictory or unreliable, he or she is not generally required to seek more information from that doctor." *Samons v. Astrue*, 497 F.3d 813, 819 (8th Cir. 2007); *accord* 20 C.F.R. § 404.1520b(c)(1) ("We may choose not to seek additional evidence or clarification from a medical source if we know from experience that the source either cannot or will not provide the necessary evidence."). Here, the ALJ fairly reached such a conclusion, and thus did not err in declining to contact Dr. Galvin for more information.

Plaintiff next challenges the ALJ's rejection of questionnaire responses completed by Dr. Roxane S. Bremen, D.O., P.C. in 2011 and 2012. These responses opined on Plaintiff's mental condition (e.g., that she suffered from depression) and physical condition (e.g., that she could not stand or walk for more than three hours in an eight-hour workday). R. at 411–14, 527–30. The ALJ properly rejected Dr. Bremen's responses. First, Dr. Bremen practices internal medicine and not psychiatry, so her opinions on Plaintiff's mental functioning are unfounded. *See id.* Second, the questionnaire responses are inconsistent with the examination findings of Dr. Bremen and other doctors. For instance, Dr. Bremen contemporaneously found that Plaintiff demonstrated entirely normal gait and station with ambulation without use of any assistive device, and recommended exercise. *E.g.* R. at 404, 561. Dr. George Edwards, M.D. also ordered Plaintiff to exercise and Dr. Victoria Anwuri, M.D. found little objective evidence of restriction. R. at 362, 515. Third, the questionnaire consisted of checkboxes and a few lines for narrative responses. Such a form has negligible probative value. *See Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012) ("[A] conclusory checkbox form has little evidentiary value when it cites no medical evidence, and provides little to no elaboration."). Thus, the ALJ properly discounted Dr. Bremen's evidence.

Next, Plaintiff argues that the ALJ erred in rejecting the opinion of treating physician Dr. Glenda Manville, M.S. that Plaintiff suffered from "marked" to "extreme" mental limitations. *See* R. at 415–16. This conclusion, however, conflicts with Dr. Manville's assessment that Plaintiff enjoyed substantial mental functioning and overall cognitive functioning. *See* R. at 312, 425, 540; *Renstrom*, 680 F.3d at 1065. It is also in tension with Dr. Manville's GAF assignment of 51–60, which was assigned in 2009 and based on virtually identical mental status findings.[3]

---

[3] The Global Assessment of Functioning ("GAF") is a numeric scale ranging from 0 to 100, representing the clinician's judgment of the individual's overall level of functioning, not including impairments due to physical or

*See* R. at 291.  Further, Dr. Manville's one-time conclusion contradicts the testimony of other doctors who repeatedly found Plaintiff to have normal mood, affect, attention, and concentration. R. at 29; *see, e.g.*, R. at 444, 514.  Thus, the ALJ was within her zone of choice when he accorded no weight to Dr. Manville's opinion.

Finally, Plaintiff argues that the ALJ erred in relying on the opinions of the non-treating physicians, Drs. Steven Akeson, Psy.D and Denise R. Trowbridge, M.D.  When the ALJ has given good reasons for rejecting the opinion of a treating physician, it is completely appropriate for her to rely on better-explained and more consistent expert medical opinions from agency doctors.  *See Tindell v. Barnhart*, 444 F.3d 1002, 1005–06 (8th Cir. 2006) (holding that the ALJ appropriately relied on a non-examining source after providing specific reasons for discounting treating physician opinions); SSR 96-6p, 1996 WL 374180, at *2–3 (July 2, 1996) ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources.").  Drs. Trowbridge's and Akeson's opinions were consistent with the objective diagnostic imaging studies and with Plaintiff's and her mother's admissions of her retained activities.  R. at 490–91, 497–98.  Therefore, the ALJ properly gave controlling weight to the non-treating physicians.

Although Plaintiff argues the ALJ erred here, "[i]t is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians."  *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001).  The Court holds that the ALJ properly weighed the medical opinions in formulating Plaintiff's RFC.

---

environmental limitations.  Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)* 30–32 (4th ed. 2000).  A score of 51–60 suggests moderate, not disabling, symptoms.  *Id.* at 32.

## II. Plaintiff's RFC is supported by the substantial evidence of the record as a whole.

Second, Plaintiff argues that the ALJ's RFC assignment of light work is not supported by substantial evidence on the record as a whole because the ALJ did not account for Dr. Akeson's opinions on Plaintiff's restrictions in social functioning. In making an RFC determination, the ALJ must rely not only on medical evidence but on all relevant, credible evidence. *McKinney*, 228 F.3d at 863. Here, the ALJ explained why Plaintiff would be able to perform work requiring social interaction, and the record supports this explanation. R. at 21–30. Plaintiff testified that she experienced no problem interacting with family, friends, neighbors, authority figures, or others. R. at 179–80; *see also* R. at 179 (Plaintiff denied that her condition affected her ability to "Get[] Along With Others"). Plaintiff indicated that her daily activities comprised visiting her family, shopping at stores, talking on the telephone, interacting with her doctors, and using the Internet for social media. R. at 58, 174–81. Further, Dr. Manville opined that Plaintiff had substantial mental functioning and overall cognitive functioning. *See* R. at 312, 425, 540. Although Dr. Akeson indicated that Plaintiff might have some substantial mental limitations, the ALJ appropriately noted the inconsistency between that opinion and Plaintiff's own testimony, and accorded controlling weight to Plaintiff's testimony. R. at 27; *see* SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996). The Court holds that Plaintiff's RFC is supported by substantial evidence on the record as a whole.

## III. The ALJ carried her burden at Step Five by identifying other work Plaintiff could perform.

Third, Plaintiff argues that the ALJ did not identify any jobs that Plaintiff is able to perform given her RFC. The ALJ at Step Five determined that Plaintiff could perform work as an office helper or routing clerk. R. at 31; *see* DOT § 239.567-010, 1991 WL 672232 (4th ed.

rev. 1991) (office helper); *id.* § 222.687-022, 1991 WL 672133 (routing clerk). According to the Dictionary of Occupational Titles ("DOT"), office helpers and routing clerks should be able to reach, handle, and finger frequently. *See* SSR 85-15, 1985 WL 56857, at *7 (Jan. 1, 1985). Further, they must have a reasoning level of two out of a six-point scale, which requires the claimant to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions." DOT app. C, 1991 WL 688702. "Uninvolved written or oral instructions," in turn, means work that is not complicated or intricate. *Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010). Although the DOT definitions are a helpful starting point at Step Five, "a claimant's reliance on the DOT as a definitive authority on job requirements is misplaced because DOT definitions are simply generic job descriptions that offer the approximate maximum requirements for each position, rather than their range." *Id.* For instance, "the Level 2 reasoning definition is an upper limit across all jobs in the occupational category, not a requirement of every job within the category." *Id.*

Plaintiff argues that she lacks both the physical and the mental abilities necessary to be an office helper or a routing clerk. However, the record amply supports the ALJ's choice of jobs and the law supports the ALJ's decision to depart from the generic qualifications imposed by the DOT. Concerning the physical limitations, Plaintiff repeatedly exhibited a full musculoskeletal range of motion and full motor strength, thus satisfying the frequent reach-handle-finger requirements for office helpers and routing clerks. *See, e.g.*, R. at 480, 510. One treating physician noted that Plaintiff had "normal sensation, reflexes, coordination, muscle strength and tone." R. at 397. These and other like findings more than met the "simply generic job descriptions" of the DOT. *Moore*, 623 F.3d at 604.

With regard to mental limitations, the ALJ discussed how Plaintiff was qualified for Level 2 reasoning jobs in general. She discussed how Plaintiff was capable of "simple, routine, and repetitive tasks," which are synonymous with "not complicated or intricate" tasks, thus placing Plaintiff within the range of Level 2 reasoning required for the office helper and routing clerk positions. *See id.*; R. at 20. Moreover, the ALJ's chosen jobs in particular show that social interaction is not important. *See* DOT § 239.567-010, 1991 WL 672232 (for an office helper, the need to speak and signal are "not significant"); *id.* § 222.687-022, 1991 WL 672133 (for a routing clerk, the need to take instructions and help are "not significant").

The Court holds that substantial evidence reflects that ALJ met her burden in determining that Plaintiff could perform other work.

## Conclusion

Because substantial evidence on the record as a whole supports the ALJ's opinion, the Commissioner's decision denying benefits is AFFIRMED.

**IT IS SO ORDERED.**

Date:  April 29, 2014                     /s/ Greg Kays                            
                                       GREG KAYS, CHIEF JUDGE
                                       UNITED STATES DISTRICT COURT